```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| LEO H. SPEARMAN,<br><br>       Plaintiff,<br>  v.<br><br>PATRICK R. DONAHOE,<br>POSTMASTER GENERAL | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 11-6666<br>       (JEI/JS)<br><br>**OPINION** |

**APPEARANCES:**

F. Michael Daily, Jr.
Sentry Office Plaza
216 Haddon Avenue, Ste. 100
Westmont, NJ 08108
    Counsel for Plaintiff

U.S. DEPARTMENT OF JUSTICE, OFFICE OF THE U.S. ATTORNEY
By:  Elizabeth Ann Pascal
401 Market Street
P.O. Box 2098
Camden, NJ 08101
    Counsel for Defendant

**IRENAS**, Senior District Judge:

    Plaintiff Leo H. Spearman is an employee of the United States Postal Service.  Spearman initiated this action against Patrick Donahoe, the Postmaster General, pursuant to the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621 - 634.[1]  Plaintiff claims that his shift at the post office was

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

abolished, forcing him to work on a less desirable shift, as a result of his age.  Pending before the Court is Defendant's motion for summary judgment.  For the reasons stated herein, Defendant's motion will be granted in full.

**I.**

For the purposes of this Motion, the Court resolves any factual disputes in favor of Plaintiff Leo Spearman.[2]

Plaintiff Leo Spearman is a mailhandler with the United States Postal Service ("USPS") at the South Jersey Processing and Distribution Center in Bellmawr, New Jersey (the "Bellmawr Facility").  (Def.'s SOMF ¶ 1,[3] Pl.'s Resp. ¶ 1.[4])  Spearman is currently 62 years old.  (See Def.'s SOMF ¶ 2, Pl.'s Resp. ¶ 3.)

Judith Herrick is the Senior Plant Manager at the Bellmawr Facility.  (Def.'s SOMF ¶ 3, Pl.'s Resp. ¶ 3.)  In early 2009, Herrick directed the South Jersey Management Team to evaluate the effectiveness of the mailhandler positions, also known as bids.  Bids are scheduled on three operating tours.  (Def.'s SOMF ¶ 10, Pl.'s Resp. ¶ 10.)  Tour 1 is the overnight shift, Tour 2 is the

---

[2]  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the nonmoving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

[3]  Citations in this form are to Defendant's Statement of Material Facts Not in Dispute submitted in support of his Motion for Summary Judgment pursuant to Local Civ. R. 56.1.

[4]  Citations in this form are to Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute.

day shift, and Tour 3 is the evening shift.  (Def.'s SOMF ¶ 9, Pl.'s Resp. ¶ 9.)  Each bid assignment has scheduled days off.  (Def.'s SOMF ¶ 9, Pl.'s Resp. ¶ 9.)  Additionally, mailhandler positions are designated as Level 4 or Level 5.  (Def.'s SOMF ¶ 10, Pl.'s Resp. ¶ 10.)  A Level 5 position requires more skill and pays a higher wage than a Level 4 position.  (Def.'s SOMF ¶ 10, Pl.'s Resp. ¶ 10.)  When vacant mailhandler positions are posted, the positions are filled in accordance with a union bidding process and are awarded based solely on seniority.  (Def.'s SOMF ¶ 11, Pl.'s Resp. ¶ 11.)

In June 2009, the USPS implemented a mailhandler staff realignment plan (the "Realignment") at the Bellmawr Facility.  (Def.'s SOMF ¶ 12, Pl.'s Resp. ¶ 12.)  As part of the Realignment, 280 mailhandler positions were adjusted, abolished, or reposted.  (Def.'s SOMF ¶ 14, Pl.'s Resp. ¶ 14.)  More specifically, the number of positions on Tour 1 was increased, while the number of positions on Tour 2 and Tour 3 was decreased.  (Def.'s SOMF ¶ 17, Pl.'s Resp. ¶ 17.)  Additionally, the Realignment gave the entire regular crew for a particular reporting area the same scheduled days off, (Def.'s SOMF ¶ 18, Pl.'s Resp. ¶ 18), although certain older individuals who would be retiring in the near future were allowed to keep their

previously scheduled days off, (Pl.'s SOMF ¶ 42.[5])  A position called mailhandler relief was created to fill in on those days when the regular crew was off.  (Def.'s SOMF ¶ 24; Pl.'s Resp. ¶ 24.)  No postal employee was fired or laid off as a result of the Realignment.  (Pascal Aff. Ex. H 33:16-19.)

Herrick initially conceived of the realignment plan herself; however, she discussed the plan with several members of her staff, including Jerry Fillman, who was the Manager of Plant Support, Operations Support Specialist William Hanna, the Managers of Distribution Operations, key supervisors on all three tours, and some of the support staff.  (Pascal Aff. Ex. H 49:9-50:2, 53:9-53:14; Ex. K 16:3-17:10.)  Additionally, Hanna created several documents and spreadsheets that the Realignment team would use and modify while developing the plan.  (Def.'s SOMF ¶ 26, Pl.'s Resp. ¶ 26.)

Prior to the Realignment, Spearman worked on Tour 2 as a Level 5 Mailhandler.  (Def.'s SOMF ¶ 13, Pl.'s Resp. ¶ 13.)  Specifically, he was a forklift operator in the APPS reporting area.  (Pascal Aff. Ex. F 37:19-23.)  Spearman's off-days were Saturday and Sunday.  (Def.'s SOMF ¶ 13, Pl.'s Resp. ¶ 13.)

Spearman's position was abolished as part of the Realignment.  (Def.'s SOMF ¶ 27, Pl.'s Resp. ¶ 27.)  After the

---

[5] Citations in this form are to Plaintiff's Statement of Facts filed with his opposition to Defendant's Motion for Summary Judgment.

Realignment, forklift operators in the APPS reporting area on Tour 2 were required to have Sundays and Mondays off, instead of Saturdays and Sundays.  (Def.'s SOMF ¶ 25, Pl.'s Resp. ¶ 25.)  At the time of realignment, Plaintiff was 58 years old.  Further, Spearman alleges that everyone on Tour 2 with weekend days off was over fifty years old.  (Pl.'s SOMF ¶ 9.)

After his bid was abolished, Plaintiff had the option to accept a residual assignment for which he was eligible within Tour 2, or bid on positions in other tours.  (Def.'s SOMF ¶ 28, Pl.'s Resp. ¶ 28.)  Had Spearman chosen to remain in Tour 2, he no longer would have been eligible for weekend days off.  (Def.'s SOMF ¶ 22, Pl.'s Resp. ¶ 22.)  Therefore, to retain his weekends off, Spearman successfully bid on a Tour 1, Level 4 mailhandler position with Saturdays and Sundays off.  (Def.'s SOMF ¶ 30, Pl.'s Resp. ¶ 30.)  Spearman's move to Tour 1, Level 4 came with a $1,000 decrease in pay; however, this decrease was offset by a ten percent night-shift differential.  (Def.'s SOMF ¶ 40, Pl.'s Resp. ¶ 40.)  The Tour 1, Level 4 position did not require Spearman to operate a forklift.  (Def.'s Br. in Opp., at 10.)  Nonetheless, Spearman admits that "the mailhandler realignment did not affect [his] seniority, opportunity for overtime, opportunity for promotion, or materially change his responsibilities in a way that setback his career."  (Pl.'s Resp. ¶ 38.)

5

Since beginning the Tour 1, Level 4 position, Spearman has successfully bid on other positions.  In 2010, Spearman successfully bid on a Tour 1, Level 5 Group Leader mailhander position with Sundays and Mondays off.  (Def.'s SOMF ¶ 43, Pl.'s Resp. ¶ 43.)  In 2011, Spearman bid on a Tour 2, Level 4 mailhandler position with Sundays and Mondays off.  (Def.'s SOMF ¶ 44, Pl.'s Resp. ¶ 44.)  In 2012, Spearman bid on a Tour 2, Level 5 Mailhandler Equipment Operator position with Mondays and Tuesdays off.  (Def.'s SOMF ¶ 46, Pl.'s Resp. ¶ 46.)  Spearman currently holds this position.

Spearman initiated this litigation by filing a Complaint with the Court on November 10, 2011, alleging that the Realignment violated his rights under the ADEA.  (Dkt. No. 1.) Specifically, the Complaint asserts that the Realignment "was intentionally taken by the Defendant to adversely effect the hard earned quality of life of the older Tour II workers and for the purpose of coercing said workers into retirement."  (Compl. ¶ 16.)[6]

---

[6] For some reason, in his Brief in Opposition to Defendant's Motion for Summary Judgment, Spearman argues that the Court should not dismiss his disparate impact claim. (Pl.'s Br. in Opp., at 15-17.)  Quite frankly, the Court finds this section of Spearman's brief virtually incomprehensible, as it puts forth such arguments as "[s]imply because the EEO investigator failed to investigate the claimant full is a disparate impact claim does not bar Spearman from bringing a claim forward at this time." Further, the Complaint only includes one count for discrimination under the ADEA, and it is plainly a disparate treatment, not a disparate impact, claim.  In fact, Spearman even admits that the

Pending before the Court is Defendant's Motion for Summary Judgment, which was filed on January 31, 2013.  (Dkt. No. 19.)  Plaintiff's brief in opposition was not filed until June 28, 2013; however, the Court permitted Plaintiff to file his brief out of time.  (Dkt. No. 23.)  Oral argument was held on July 3, 2013.

## II.

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the burden of establishing that no genuine issue of material fact remains.  "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'–

---

"only allegation in this litigation is disparate treatment on the basis of age."  (Pl.'s Resp. ¶ 52.)  In this Opinion, the Court will only address disparate treatment, since it is the only claim properly asserted by the Plaintiff in his Complaint.

that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 252.

### III.

#### A.

The ADEA provides, in pertinent part, that "it shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions,

or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The purpose of the ADEA is to prevent discrimination against older employees on the basis of their age. *See* 29 U.S.C. § 621(b).

In the context of a motion for summary judgment, Courts analyze ADEA claims under the burden shifting framework of *McDonnell Douglass Corp v. Green*, 411 U.S. 792 (1973). *See Deville v. Givaudan Fragrances Corp.*, 419 Fed. Appx. 201 (3d Cir. 2011). Under this framework, "plaintiffs bear the burden of proof and production to make out a prima facie case." *Id*. To make out a prima facie case, a plaintiff must show that (1) the plaintiff is 40 years of age or older; (2) the defendant took an adverse employment action against the plaintiff; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discrimination. *Id*.

If a plaintiff satisfies these elements, "then the burden of production shifts to the employer to identify a legitimate nondiscriminatory reason for the adverse employment action." *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009). If the employer satisfies this burden, then the burden of production shifts back to the plaintiff, who must demonstrate that the "employer's proffered rationale was a pretext for age

discrimination." *Id*. The Third Circuit has held that in order to show pretext:

> a plaintiff must submit evidence which (1) casts doubt upon the legitimate reason proffered by the employer such that a fact-finder could reasonably conclude that the reason was a fabrication; or (2) would allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination. Put another way, to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a fact-finder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, that the proffered reason is a pretext).

*Doe v. C.A.R.S. Protection Plus, Inc.* 527 F.3d 358, 370 (3d Cir. 2008). "A plaintiff may not establish pretext simply by showing that the employer's decision was wrong or mistaken because the main issue is whether the employer acted in a discriminatory manner." *Robinson v. Matthews Int'l Corp.*, 368 Fed. Appx. 301, 305 (3d Cir. 2010) (citing *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)).

In the instant case, summary judgment in favor of the defendant is proper because Spearman cannot sustain a prima facie case under the ADEA nor prove that Defendant's stated reasons for realignment were pretext.

### **B.**

Spearman cannot make out a prima facie case under the ADEA for two reasons: (1) he cannot show he was subject to an adverse employment action, and (2) he cannot show that he was replaced

by someone significantly younger to support an inference of discrimination.

### 1.

An "adverse employment action" for purposes of the ADEA is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Reynolds v. Dep't of Army*, 2010 WL 2674045, at *12 (D.N.J. 2010) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)). Thus, a "purely lateral transfer does not, by itself, constitute an adverse employment action." *Fallon v. Meissner*, 66 Fed. Appx. 348, 352 (3d Cir. 2003) (internal citations and quotations omitted). However, a transfer can be considered an adverse employment action, even if it does not involve a loss of pay or benefits, if the transfer is to a "dead end job." *See id*. (citing *Torre v. Casio, Inc.*, 42 F.3d at 831 n.7 (3d Cir. 1994)). In addition, "a transfer to 'an undesirable shift' that left the plaintiff with 'none of the customary free time' he was accustomed to was found to be sufficient for a prima facie case." *Fallon*, 66 Fed. Appx. at 351 (quoting *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 787 (3d Cir. 1998)).

In the instant case, after his Tour 2, Level 5 mailhandler position with weekends off was abolished, Spearman opted to bid

on a Tour 1, Level 4 position to retain his weekends off. This change in position came with a minor decrease in pay, and did not require Spearman to operate a forklift. In addition, Spearman's hours changed from a day shift to a night shift. Had the USPS forced Spearman to transfer to this position after abolishing his Tour 2, Level 5 position, then it may constitute an adverse employment action.

However, the USPS did not transfer Spearman to the Tour 1, Level 4 position. Instead, Spearman had the choice to remain on Tour 2 with different days off, or bid on positions in different tours. Spearman provides no evidence that anything other than his days off would have changed had he simply opted to remain on Tour 2. Such a transfer could not possibly be characterized as a transfer to a "dead end job" or a transfer to an "undesirable shift that left the plaintiff with none of the customary free time he was accustomed to." *See Fallon*, 66 Fed. Appx. at 351. Spearman even admits that the Realignment "did not affect [his] seniority, opportunity for overtime, opportunity for promotion, or materially change his responsibilities in a way that setback his career." (Pl.'s Resp. ¶ 38.) That Spearman opted to bid on a Tour 1, Level 4 position rather than accept a transfer to a different Tour 2 position does not transform the Realignment into an adverse employment action. Therefore, no reasonable jury could find that Spearman was subject to an adverse

12

employment action.

### 2.

In addition to being unable to prove that he was subject to an adverse employment action, Spearman also cannot prove that he was replaced by someone significantly younger to support an inference of discrimination.

Spearman argues that he was replaced in his job operating a forklift in the APPS reporting area on Monday through Friday by Joanne Colella, who was 43 years old. (Pl.'s Br. in Opp., at 11.) However, Spearman, or perhaps his attorney, must be aware that this argument is entirely disingenuous. Spearman bases his assumption that Colella "replaced" him on the fact that he saw Colella operating a forklift on Mondays. (Sunnergren Aff. Ex L at 6.) However, as Spearman himself admits in his deposition, Colella was part of the mailhandler relief crew that was created during the realignment to fill in when the regular crew was off, which, in Spearman's case, included Mondays. (Pascal Aff. Ex. F 50:18-19.) Spearman also admits that Colella's days off were Thursday and Friday, as opposed to Saturday and Sunday, and that Colella did not drive the forklift in the APPS reporting area Monday through Friday, but instead "relieves in different areas." (*Id*. at 51:3-6, 52:2-6.) Given that Spearman is aware that Colella's responsibilities and days off are different from what his were prior to the Realignment, the Court cannot

understand how Spearman and his attorney can attempt to argue that Spearman's old job operating a forklift Monday through Friday "still existed, but was filled by a younger employee, Joanne Coella (sic.)." (Pl.'s Br. in Opp., at 11.) In any event, based on Spearman's own deposition testimony it is clear that no reasonable jury could find that Spearman was replaced by someone significantly younger to support an inference of discrimination.

### C.

Lastly, summary judgment in favor of Defendant should be granted because, even assuming that Spearman could make a prima facie showing of age discrimination, Spearman cannot show that Defendant's stated non-discriminatory reasons for the Realignment were a pretext for age discrimination.

In response to Spearman's charge of age discrimination, Defendant argues that the Realignment was an attempt to "match mailhandler hours to workload, increase efficiencies, and reduce high overtime usage." (Def.'s Br. in Supp., at 27.) According to Herrick, the USPS has not hired career employees for a long period of time. (Pascal Aff. Ex. H 31:11-25.) As a result, when people retired, if remaining employees did not bid on the position held by the now retired employee, the bid would remain vacant. (*Id.*, at 31:19-25.) These vacancies, according to Herrick, could create inefficiencies if they were in areas where

the need for work was high.  (*Id*.)  The Realignment attempted to fix this inefficiency by staffing workers on the days when there was the most need, and using mailhandler relief employees when the need was less.  (*See generally id.* at 31:11-34:4; Pascal Aff. Ex. K 22:11-25.)  Plaintiff's bid was thus abolished because, according to Herrick and Operations Specialist Hanna, Sunday and Monday are generally the lightest days at the Bellmawr Facility.  (Pascal Aff. Ex. H 39:16-18; Pascal Aff. Ex. K 22:11-25.)  Consequently, the days off for forklift operators on Tour 2 were shifted to Sunday and Monday, with the mailhandler relief employees filling in on those days.  (Def.'s SOMF ¶ 25, Pl.'s Resp. ¶ 25.)

Spearman argues that this explanation is pretextual.  In support of this argument, Spearman states that no research was done as to how the realignment would help reduce overtime and that Herrick "did not discuss her proposed plan with anyone in senior management or with other postal distribution centers." (Pl.'s Br. in Opp., at 14.)  Spearman also states that "after the implementation of the realignment the Postal Service has actually incurred millions, biweekly, on overtime in the Bellmawr, NJ facility."  (Pl.'s SOMF ¶ 55.)

Spearman's arguments are either inaccurate or irrelevant. It is false to claim that Herrick "did not discuss her proposed plan with anyone in senior management or with other postal

15

distribution centers," and that no research was done as to how the realignment would reduce overtime.  Both Herrick and Hanna testified that Herrick discussed the plan with several members of her staff, such as Jerry Fillman, who was the Manager of Plant Support, Hanna, the Managers of Distribution Operations, key supervisors on all three tours, and some of the support staff.  (Pascal Aff. Ex. H 49:9-50:2, 53:9-53:14; Ex. K 16:3-17:10.)  Further, Spearman admits in his response to Defendant's Statement of Material Fact that there was a "realignment team" which met on "several occasions to collaborate."  (Def.'s Resp. ¶ 26.)  In addition, Spearman admits that several documents and spreadsheets were used by the Realignment team while developing the plan, undermining his argument that no research was done as to how the realignment would reduce overtime.

Spearman's attempt to use the ultimate success or failure of the plan at reducing overtime also misses the mark.  "A plaintiff may not establish pretext simply by showing that the employer's decision was wrong or mistaken because the main issue is whether the employer acted in a discriminatory manner." *Robinson*, 368 Fed. Appx. at 305 (citing *Fuentes,* 32 F.3d at 765).  Simply put, Spearman cannot point to any evidence which suggests that Defendant acted in a discriminatory manner.

Spearman's attempts to show pretext are also unavailing because they only address one of Defendant's stated reasons for

16

implementing the Realignment, namely, to reduce overtime. However, Defendant also stated that the plan was intended to match mailhandler hours to workload and increase efficiencies. As far as the Court can tell, Spearman does not even attempt to argue that these legitimate, non-discriminatory reasons, are pretextual or that the Realignment failed in achieving these goals.

Overall, while the Realignment affected a great number of USPS employees, there is nothing in the record to suggest that the Realignment was motivated by prejudice towards older USPS employees, or that the reasons for the Realignment put forth by Defendant are pretextual.  One could even argue that the most senior employees were the best protected during the Realignment, as their seniority gave them priority during the bidding process, and some of the older employees who were going to be retiring soon were even allowed to keep their previously scheduled days off. (Def.'s SOMF ¶ 42.)  On these facts, it is clear that no reasonable jury could find Defendant's stated reasons for realignment to be a pretext for age discrimination.

**IV.**

For the foregoing reasons, Defendant's Motion for Summary Judgment is hereby granted in full.  An appropriate Order will accompany this Opinion.


Dated: July  17th , 2013            s/Joseph E. Irenas            
                                   **Joseph E. Irenas, S.U.S.D.J.**